Filed 10/18/24  P. v. Parkinson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>THOMAS JEFFREY PARKINSON,<br><br>    Defendant and Appellant. | C098506<br><br>(Super. Ct. Nos. CRF15-0002905, CRF15-0007437) |

In 2015, defendant Thomas Jeffrey Parkinson, pursuant to a negotiated plea entered a plea of no contest to felony domestic violence as defined in Penal Code section 273.5, subdivision (a).  (Statutory section citations that follow are found in the Penal Code unless otherwise stated.)

In January 2016, pursuant to the plea agreement, the trial court imposed an upper-term sentence of four years imprisonment but stayed the execution of sentence and placed defendant on probation for three years.

1

In January 2017, defendant absconded from probation, and did not appear again until January 2022. After further violations of probation, in April 2023, the trial court revoked defendant's probation and lifted the stay on the four-year prison sentence.

Defendant appeals and makes two arguments.

First, defendant argues that the trial court abused its discretion when it found defendant was ineligible for mental health diversion under section 1001.36. He argues he was entitled to the retroactive application of section 1001.36 under *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*).

Second, defendant argues the trial court erred when it found he was ineligible for retroactive application of amendments made to section 1170, subdivision (b), by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567), which relates to the method by which a trial court exercises its discretion when it imposes one of three possible specified terms of imprisonment as set forth in the Penal Code.

We affirm the judgment.

### FACTS AND HISTORY OF THE PROCEEDINGS

In May 2015, in Shasta County Superior Court Case No. 15F2905 (2905), defendant was charged under section 211 with the first degree residential robbery of T.D.; making felony threats against T.D. under section 422; and with felony corporal injury resulting in a traumatic condition to a spouse, former spouse, cohabitant, former cohabitant, or mother of his child (domestic violence) against T.D. within the meaning of section 273.5, subdivision (a).

In November 2015, in Shasta County Superior Court Case No. 15F07437 (7437), defendant was charged with felony domestic violence against C.R. pursuant to section 273.5, subdivision (a). The complaint alleged that defendant had been convicted of domestic violence within the prior seven years as contemplated by section 273.5, subdivision (f).

2

On December 9, 2015, pursuant to a plea agreement encompassing both case Nos. 2905 and 7437, defendant pleaded no contest to the charge of felony domestic violence within the meaning of section 273.5, subdivision (a) as alleged in case No. 7437. The section 273.5, subdivision (f), allegation in that case was to be stricken.

According to the plea agreement, defendant would serve three years on formal felony probation and one year in custody with early release to an inpatient drug program of no less than six-months in length and he would be required to complete a 52 week batterer's treatment program. The court would also impose a sentence of four years in state prison, but the execution of that sentence would be suspended. The trial court accepted the plea agreement.

On January 7, 2016, the trial court found defendant guilty of felony domestic violence under section 273.5, subdivision (a) in accordance with the plea agreement. The court committed defendant to state prison for four years but suspended execution of that sentence for three years and admitted the defendant to formal probation under various terms and conditions.

Defendant was terminated from the first rehabilitation program he entered on January 8, 2016, and was directed to enroll in another treatment program by May 9, 2016. He enrolled in another program on May 6, 2016, and left that program on May 20, 2016. Probation again directed defendant to enter a treatment program on June 2, 2016, which he did. Defendant graduated from this third program, a 30-day residential program, on July 1, 2016.

On January 19, 2017, defendant reported to probation and asked for a transfer of his probation to Colorado. Thereafter, defendant failed to report to probation and the trial court issued a bench warrant on April 17, 2017.

On January 31, 2022, defendant voluntarily appeared on the bench warrant and reported to probation that same day.

3

At a February 8, 2022, hearing, pursuant to an agreement with the prosecution, the defendant admitted he had not reported to the probation department's telephone reporting system since January 19, 2017, and that as of March 16, 2017, he was not living at his last reported address. He admitted that he had moved to Colorado and he admitted to failing to participate in and complete a batterer's treatment program.

In exchange for defendant admitting the probation violations, the court continued the matter for a "couple of months" and set a hearing for April 7, 2022. The court said that if during that time defendant was compliant with probation and underwent a batterer's treatment program, he would receive a maximum term of 180 days. But if new petitions for violations of probation were filed or if he was not participating in a batterer's treatment program, that would be considered "an open admission."

A probation report prepared in anticipation of the April 7 hearing said that, in early 2022, defendant had asked for a travel pass to stay with his parents outside of Shasta County, but he later claimed he had decided to live with his sister in Shasta County while he completed a batterer's treatment program. When defendant reported to probation on March 28, 2022, he said he had moved to Susanville, in Lassen County, with his father. Since he did not have permission to move to Lassen County he was admonished.

At the April 7, 2022, hearing, defendant was given a 30-day travel pass to Susanville and directed to call his probation officer every Monday. Defendant made an initial call on April 11, 2022, but said he was not required to call weekly. He then failed to call weekly, and a petition for violation of probation was filed on May 24, 2022. The defendant reported to the probation department on June 28, 2022, and wanted to know how he could become compliant with his terms of probation.

At a hearing on August 10, 2022, in exchange for remaining out of custody pending a section 1204 hearing and a four-year maximum sentence, defendant admitted that he had been directed to contact probation every Monday but had not done so on April 18, 2022; April 25, 2022; and May 9, 2022. He admitted he had been given a travel

pass for April 7, 2022, to May 5, 2022, with directions to report to probation upon his return to Shasta County and that he failed to report.

At this hearing defendant said he understood that in admitting to his probation violations he was giving up the right to have a formal evidentiary hearing regarding the alleged violations. At the request of defense counsel the court set a section 1204 hearing for November 17, 2022.

Defendant did not appear at the November 17, 2022, hearing apparently due to illness. However defendant appeared at the probation office and said he wanted to attend a residential treatment program, but denied any substance abuse issues. He was advised if he was accepted by a recovery center in Humboldt, a travel pass would be authorized. It appears defendant never followed-up and secured a travel pass. His next appearance was set for November 29, 2022.

On November 29, 2022, the trial court continued the section 1204 hearing to December 15, 2022.

Defendant failed to appear on December 15, 2022, and a bench warrant was issued for his arrest.

The defendant did not again contact the Probation Department until February 17, 2023. He said he was homeless and living in Redding. He was told to report to probation by February 27, 2023.

The defendant called the probation department on February 27, 2023, and said he was hospitalized in the behavioral health unit at Shasta Regional Medical Center.

On March 13, 2023, the defendant called the probation department and reported he had entered the Visions of the Cross residential program on March 10, 2023.

In a March 30, 2023, memorandum to the court, the probation department wrote, "[t]he defendant['s] progress on Probation has been minimal. He failed to report for three months and has not attended his Batterer's Treatment Program (BTP) since 11/2/22 and has only completed 19 out of 52 classes. The defendant enrolled in BTP on 2/26/22,

5

surpassing the one-year mark with over just a third of the classes completed. Additionally, the Probation Department was unaware the defendant entered Humboldt Recovery Center during his period of abscond. A message was left with the Substance Abuse Specialist to confirm the completion and has been met with negative results. [¶] Initially, the Probation Department was willing to afford the defendant another chance on probation, however, his continued lack of compliance is a pattern the defendant has shown and affording him another opportunity on probation would be futile. The Probation Department will rescind the original recommendation and recommend the defendant be sentenced to state prison."

A section 1204 and sentencing hearing was held on April 27, 2023. In anticipation of the hearing, the defendant filed a sentencing memorandum and statement in mitigation; and a notice of motion and motion to continue the hearing.

In the sentencing memorandum, the defense stated that in February 2023, defendant had attempted suicide by jumping off a 75-to-80 foot bridge into water. It noted that on March 10, 2023, defendant had enrolled in a residential program, but that he was remanded after appearing in court on March 20, 2023, regarding the December 2022 bench warrant.

The defense urged the court to consider that defendant "suffers from behavioral and mental health issues which he has taken enormous strides to attempt to rectify since returning to California last year." The defense stated defendant "has mental health concerns as plainly shown from his recent attempted suicide and stays in rehabilitative centers, but he is taking significant steps in attempting to treat those conditions." The defense argued it was clear based on attached statements from family members, defendant's recent stays in rehab, and his mental health history that defendant needs mental health and possibly substance abuse treatment. The memorandum said: "the defense implores the Court to consider extending probation and possibly ordering an added condition of court ordered treatment in a residential facility. If so ordered, the

6

Social Workers in the Public Defender's Office will submit a treatment plan for the Court's review and approval.  As an alternative, the defense is asking the court to consider referring Mr. Parkinson to the Behavioral Health Court."

The defense argued that probation should be revoked and reinstated.  The defense urged the court to sentence defendant to the middle term, if it declined to return defendant to probation.  The defense added that changes to section 1170 that governed the court's discretion to select the lower, middle, or upper term were retroactive to cases not final on appeal, and that this case was not final on appeal.

Attached to the memorandum were copies of various documents including a letter reflecting defendant's successful completion of the program at the Humboldt Recovery Center, a letter regarding defendant's enrollment in the Visions of the Cross program, defendant's discharge papers from a hospital after he jumped off a bridge with plans to discharge him to a mental health facility, and various letters in support from family members.  His sister reported that the hospital "evaluated [defendant] as insane" which she described as a good thing because it got him the "medication he's needed to be on since" he was a child.  A family friend wrote she had observed a marked difference in the defendant's behavior in the few weeks since he was diagnosed and received medication, stating, "he is a new person with feeling the depression and anxiety."  His mother wrote that defendant had told her he felt like a new person once he started medication and was not experiencing depression and anxiety like before.

In a statement the defendant wrote, he said that he had been in an unhealthy relationship that "centered around the use of drugs and my mental health issues.  An argument that led to a physical altercation ended with me being arrested."  He said he was working to get education and therapy to overcome addiction and address his mental health issues.  He wrote, "I have severe mental health issues and recently was admitted to a behavioral health unit where they 5150'd me due to a suicide attempt.  I am grateful to

7

be alive and to have only come away with a broken back. I am now on medication and was seeing a therapist weekly to address my mental health."

In the motion to continue the section 1204 hearing, the defense argued the court should grant a continuance of one month to give the defense time to gather information to file a motion for mental health diversion under section 1001.36. Counsel filed a declaration stating he first learned of defendant's qualifying diagnosis on April 12, 2023. In his supporting declaration, counsel wrote, "I am informed and believe that Mr. Parkinson was diagnosed with the qualified mental health disorder prior to 2016."

On the day of the April 27, 2023 hearing, after an in chambers discussion where the court gave an informal tentative ruling denying the motion to continue, the defense filed a supplemental memorandum regarding the motion to continue. The memorandum argued that defendant should be eligible for mental health diversion, despite the fact that he was on probation and had already entered a plea when he sought a continuance to bring a section 1001.36 motion, because his case was not yet final when section 1001.36 was adopted, and under *Frahs, supra,* 9 Cal.5th 618, defendants whose judgments were not final when section 1001.36 became effective were entitled to a determination of whether they qualified for diversion. The defense argued that *People v. Rodriguez* (2021) 68 Cal.App.5th 584 (*Rodriguez*), review granted November 10, 2021, S270895, which the court had informally cited as a reason to deny the continuance, did not prevent defendant from seeking section 1001.36 relief. The defense reasoned *Rodriguez* had concluded defendants who entered pleas of guilty after section 1001.36 was adopted were not entitled to mental health diversion determinations under section 1001.36, but defendant had entered his plea before section 1001.36 was adopted.

At this hearing, the court stated, "I'm denying the motion to continue because I don't find that the defendant would be eligible even if he would be factually suitable for Mental Health Diversion because of the procedural posture of his case. He has entered a plea, therefore, he is post judgment, he is on probation, and based upon the holding of the

*Rodriguez* court that talks about those issues, I don't feel that there would be any reason to continue the case simply to determine later on that this defendant can't be placed on Mental Health Diversion."

The court opined that "the defense's reading of *Frahs* is a bit overbroad. I think what that would mean would be anybody who was on probation based upon a pre-[2018] . . . plea when 1001.36 was enacted would be eligible to run a mental health diversion motion after a plea. I don't think that's what the cases have held so far."

The court recognized that there were cases pending before the Supreme Court that might refine the scope of who is eligible to seek section 1001.36 diversion, including *People v. Braden*, later decided on June 5, 2023. (*People v. Braden* (2023) 14 Cal.5th 791 (*Braden*).)

The court said, "I'm doing the best I can based upon the facts that I have and the law that I have to determine where I think this defendant is. . . . I just simply don't find that this defendant is . . . factually in a posture where he can ask for diversion given the fact he is post plea and on probation. So I'm going to deny the motion to continue."

The court also addressed defendant's request to be sentenced under the amended version on section 1170. The court stated it believed, given the posture of this case, that its two sentencing choices were to either put defendant back on probation or to impose the suspended four-year sentence. It stated, "I am not in agreement that the new sentencing laws would affect this defendant such that I could do anything other than impose the" executed suspended sentence. The court cited *People v. Mitchell* (2022) 83 Cal.App.5th 1051, review granted December 14, 2022, S277314, (*Mitchell*) for this proposition.

The court denied reinstatement of probation and imposed the four-year suspended sentence.

We note that section 1001.36 was enacted in 2018. Defendant fled from probation in 2017 and voluntarily returned in 2022. Thereafter, he appeared in court on these

9

matters at least four separate times before the section 1204 hearing (January 31, 2022, February 8, 2022, April 7, 2022, August 10, 2022), but he did not move for a continuance to investigate mental health diversion until his last appearance before the trial court on April 27, 2023. This was approximately eight years after his plea and five years after the statute was enacted, exhausting in the interim substantial judicial resources and only then requesting a further continuance to "investigate" into his eligibility for diversion.

On May 2, 2023, defendant filed a notice of appeal.

DISCUSSION

I

*Mental Health Diversion Under Section 1001.36*

Defendant argues that the trial court abused its discretion when it concluded he was ineligible for mental health diversion and therefore denied his request for a continuance to investigate whether he qualified for mental health diversion under section 1001.36.

Enacted in 2018, with an effective date of June 27, 2018, section 1001.36 authorizes pretrial diversion "on an accusatory pleading" for defendants with qualifying mental disorders when the mental disorder was a significant factor in the commission of the charged offense. (Stats. 2018, ch. 34, §§ 24 & 37; § 1001.36, subds. (a)-(b).) Since its enactment, section 1001.36 has been amended multiple times, but that part of the statute that defines pretrial diversion has remained substantively unchanged. (Compare Stats. 2018, ch. 34, § 24, enacting then § 1001.36, subdivision (c) with current § 1001.36, subd. (f).)

Pretrial diversion within the meaning of the statute is defined as " . . . the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged *until adjudication* . . . ." (§ 1001.36, subd. (f)(1), italics added.)

10

In *Braden, supra,* 14 Cal.5th 791 the California Supreme Court held: "although the phrase 'until adjudication' (§ 1001.36(f)(1)), standing alone, is susceptible of more than one meaning, we resolve that ambiguity in light of the language of section 1001.36 as a whole and the entire statutory scheme governing diversion, including the Legislature's codified statement of purpose. *Accordingly, we hold that, to be timely, a request for diversion must be made before attachment of jeopardy at trial or the entry of a guilty or no contest plea, whichever occurs first.* This interpretation best comports with the concept of 'pretrial diversion,' harmonizes section 1001.36 within the statutory scheme, and is consistent with the Legislature's goals to accelerate mental health diversion, reduce pretrial incarceration, and preserve finite judicial resources." (*Id.* at p. 819, italics added.)

Defendant entered his plea of no contest on December 9, 2015, and made his motion to "investigate" whether he qualified for diversion on April 27, 2023, some eight years after his case had been adjudicated. His request to investigate whether he came within the provisions of section 1001.36 was equivocal and was not a motion for diversion. Even had his later investigation established that he qualified for diversion, a later motion under the statute would not have been timely and, therefore, the trial court did not err in denying his motion to continue.

Defendant cites *Frahs, supra,* 9 Cal.5th 618 in support of his argument that denial of his motion to continue to investigate his eligibility for diversion was error. But *Frahs* provides him no relief.

In *Braden*, the Supreme Court distinguished *Frahs*. The *Braden* court said its decision in *Frahs* did not answer the question of the meaning of the phrase "until adjudication" as it is used in section 1001.36, subdivision (f)(1). "The question in *Frahs* was whether section 1001.36 applies retroactively to cases in which the judgment was not yet final on appeal when the statute went into effect. Our inquiry was governed by the rule in *In re Estrada* (1965) 63 Cal.2d 740, which 'rests on an inference that, in the

11

absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' [Citations omitted.] We held the Legislature did not clearly indicate a contrary intent as to retroactivity. As a result, those defendants whose cases were not final on appeal, and who had no opportunity to request diversion in the trial court, should be permitted to do so. (*Frahs*,[ *supra,* 9 Cal.5th] at pp. 624, 628-637.)" (*Braden*, *supra*, 14 Cal.5th at pp. 801-802.) Thus, *Frahs* has no bearing on the question currently before us.

We recognize that defendant entered his plea of no contest before section 1001.36 was enacted. Even so, for us to hold here that defendant had a right to request diversion post plea, that is post adjudication, would require us to add a qualification to the holding in *Braden* and the language of the statute that does not appear in either. That is something we do not have the authority to do. (*Auto Equity Sales v. Superior Court* (1962) 57 Cal.2d 450.)

## II

### *Section 1170 Amendments Under Senate Bill 567*

Defendant contends that amendments to section 1170 enacted by Senate Bill 567 (2021-2022 Reg. Sess.) applied to his case retroactively. He argues the trial court erred when it concluded the amendments were inapplicable to his sentence because his sentence was pursuant to a stipulated plea agreement. The People agree that Senate Bill 567's amendments apply retroactively to defendant's nonfinal judgment. But the People argue that defendant is estopped from asserting a sentencing error on appeal, and defendant does not benefit from the amendment because the court lacked discretion to modify his suspended sentence which was imposed pursuant to the terms of a plea agreement. As to the latter, we agree with the People. Therefore, we do not address the People's argument regarding estoppel.

Senate Bill 567

As amended by Senate Bill 567, section 1170, subdivision (b), provides in pertinent part: "(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2). [¶] (2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. . . . . [¶] (3) Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury. This paragraph does not apply to enhancements imposed on prior convictions."

As a general matter, Senate Bill 567's amendments apply retroactively to all nonfinal cases. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109.)

However, the People argue, defendant does not benefit from these amendments because the upper term sentence defendant challenges on this appeal was imposed as part of a stipulated sentence.

The Courts of Appeal have divided on the question of whether a defendant who agreed to an upper term sentence as part of a stipulated plea agreement is entitled to a remand for resentencing given the passage of Senate Bill 567. The issue is currently under review by the Supreme Court. (Compare *Mitchell, supra,* 83 Cal.App.5th 1051, 1057-1059, review granted [trial court exercised no discretion in imposing stipulated sentence in plea agreement; defendant thus not entitled to remand]; *People v. Sallee* (2023) 88 Cal.App.5th 330, 334, 338, review granted Apr. 26, 2023, S278690 [same]; with *People v. Todd* (2023) 88 Cal.App.5th 373, 377-382 (*Todd*), review granted Apr. 26,

13

2023, S279154 [disagreeing with *Mitchell* and concluding stipulated sentence in negotiated plea agreement does not negate requirements under amended § 1170, subd. (b), making remand appropriate remedy]; *People v. Fox* (2023) 90 Cal.App.5th 826, 833-834 (*Fox*) [same]; *People v. De La Rosa Burgara* (2023) 97 Cal.App.5th 1054, 1062-1063, review granted Feb. 21, 2024, S283452 [agreeing with *Todd* and *Fox*].)  While we wait for the Supreme Court to decide the issue, we agree with the reasoning in *Mitchell*, *supra*.

Section 1170, subdivision (b), contemplates the imposition of one of three possible statutory sentencing terms in the "sound discretion" of the trial court.  In *Mitchell*, *supra*, 83 Cal.App.5th at pages 1057-1058, review granted, the court quoted *People v. Brooks* (2020) 58 Cal.App.5th 1099 (superseded by statute as stated in *People v. Harrell* (2023) 95 Cal.App.5th 161, 166) to explain, that " '[w]hen a court accepts a plea bargain, the court must impose a sentence within the limits of that bargain.  [Citations.]  Thus, a court may not modify the terms of a plea agreement while otherwise leaving the agreement intact, "nor may the court effectively withdraw its approval by later modifying the terms of the agreement it had approved." ' ([*Brooks*] at pp. 1106–1107.)"  Thus "a stipulated plea agreement 'gave the court no room to exercise discretion in the selection of a low, middle, or high term' under former section 1170, subdivision (b).  (*Brooks*, at p. 1109.)" (*Mitchell*, *supra*, 83 Cal.App.5th at pp. 1057-1058, review granted.)

Instead, "when presented with a stipulated plea agreement, a trial court may either accept or reject it." (*Mitchell*, *supra*, 83 Cal.App.5th at p. 1058, review granted.)  In contrast, and as noted earlier, section 1170 contemplates imposition of sentence in the trial court's "sound discretion."  (§ 1170, subd. (b)(1).)  The court in *Mitchell* stated the language in section 1170, subdivision (b), that refers to a sentence made in the court's sound discretion "indicates that the statute was not intended to apply to sentences imposed pursuant to a stipulated plea agreement, as the trial court lacks discretion to select the sentence in the first place." (*Mitchell*, at p. 1058, review granted.)

14

In urging this court to follow *Todd*, defendant cites *Todd*'s statement that section 1170, subdivision (b), "prohibits the imposition of the upper-term sentence absent specific findings." (*Todd*, *supra*, 88 Cal.App.5th at p. 378, review granted.) The *Todd* court then attempted to distinguish *Brooks* by saying, "[i]n *Brooks*, the plea bargain resulted in a sentence that was within the boundaries of the Penal Code's sentencing structure. Here, the imposition of the aggravated term exceeds the court's authority unless the statutory prerequisites are met or waived because the aggravated term cannot be imposed absent the court's finding of those circumstances." (*Todd*, *supra*, 88 Cal.App.5th at p. 379, review granted.)

We disagree that imposition of the aggravated term exceeds the court's authority in this context. The obligation to find a circumstance in aggravation before exceeding the middle term, as it is stated in section 1170, subdivision (b)(2), is triggered when the court is exercising its "sound discretion" to impose one of three terms as provided for in section 1170, subdivision (b)(1). *Todd*'s interpretation of section 1170, subdivision (b)(1), either reads section 1170, subdivision (b)(2) in isolation, or reads "in its sound discretion" out of section 1170, subdivision (b)(1), neither of which is appropriate. (See *People v. Barasa* (2002) 103 Cal.App.4th 287, 291-292 [statutory provisions must be construed not in isolation but in the context of the entire statutory scheme, and an interpretation that renders related provisions nugatory must be avoided].)

For similar reasons, we are not persuaded by defendant's argument that in using the word "impose" instead of " 'select' (or some equivalent)" in section 1170, subdivision (b), the Legislature was signaling the term "sound discretion" was intended to sweep broadly enough to include the discretion a trial court applies when deciding whether to approve a plea agreement or withdraw an approval at sentencing when it imposes a sentence.

" '[A] judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. [Citation.] "A plea agreement is, in essence, a contract

15

between the defendant and the prosecutor to which the court consents to be bound." [Citations.] Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly. [Citation.] Once the court has accepted the terms of the negotiated plea, "[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree." [Citation.]' [Citation.] [¶] The People, as well as a defendant, are entitled to enforce the terms of a plea bargain. [Citation.] 'The state, in entering a plea bargain, generally contemplates a certain ultimate result; integral to its bargain is the defendant's vulnerability to a term of punishment.' [Citation.]" (*People v. Cunningham* (1996) 49 Cal.App.4th 1044, 1047-1048; accord *People v. Stamps* (2020) 9 Cal.5th 685, 701.) Defendant's effort to stretch section 1170, subdivision (b), to sentences imposed under plea agreements takes the language out of context, where the statute contemplates a court using its discretion to decide which of three terms to impose. Nothing about the language of section 1170, subdivision (b), suggests it contemplates a scenario in which the court is deciding whether to impose a stipulated sentence or to jettison an entire plea agreement.

In additional portions of *Todd* cited by defendant, the *Todd* court relied on section 1016.8, subdivision (a)(1), which states: " 'The California Supreme Court held in *Doe v. Harris* (2013) 57 Cal.4th 64 that, as a general rule, plea agreements are deemed to incorporate the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. That the parties enter into a plea agreement does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them.' " (*Todd*, *supra*, 88 Cal.App.5th at p. 379, review granted, quoting § 1016.8, subd. (a)(1).) The court reasoned that following *Mitchell* "would render [the defendant's] plea bargain to a stipulated sentence the very waiver of 'unknown future benefits of legislative enactments' that the Legislature has deemed void as against public policy because his entry of plea on those terms was not 'knowing and intelligent.' " (*Todd*, *supra*, 88 Cal.App.5th at p. 380, review granted,

quoting § 1016.8, subd. (a)(4).) Concluding that "the relevant question here is not whether the sentencing judge is bound by the parties' stipulated sentence, but whether [the defendant] is entitled to the ameliorative effect of [the] new sentencing provisions," the *Todd* court concluded *People v. Stamps, supra,* 9 Cal.5th 685 compelled retroactive application of amended section 1170, subdivision (b), despite the stipulated sentence and remanded the matter to the trial court to allow the defendant to either waive or invoke these new requirements. (*Todd*, at pp. 380-381, review granted; see also *Fox, supra,* 90 Cal.App.5th at pp. 831-832.)

But the relevant question here is not whether Senate Bill 567's changes to section 1170, subdivision (b), apply retroactively to the defendant's case. The People concede as much. The relevant question is whether the additional requirements of section 1170, subdivision (b)(2), read together with subdivision (b)(1), apply to a stipulated sentence. For the reasons already expressed, we conclude they do not.

We are also not persuaded by defendant's reference to section 1170, subdivision (a)'s statement regarding the Legislature's findings regarding sentencing. Section 1170, subdivision (a), states, "[t]he Legislature finds and declares that the purpose of sentencing is public safety achieved through punishment, rehabilitation, and restorative justice. . . . This purpose is best served by terms that are proportionate to the seriousness of the offense with provision for uniformity in the sentences of people incarcerated for committing the same offense under similar circumstances." Holding defendants to their stipulated sentences under plea agreements does not run counter to this statement of Legislative intent.

DISPOSITION

The judgment is affirmed.

_____

17

HULL, Acting P. J.


We concur:


_____

BOULWARE EURIE, J.


_____

WISEMAN, J.*


* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18